**2013 BNH 014 Note: This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.**
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:

                                                          Bk. No. 13-11075-BAH
                                                          Chapter 11

PM Cross, LLC,

        Debtor


*Peter N. Tamposi*
*The Tamposi Law Group*
*Nashua, NH*
*Attorney for the Debtor*

*David A. Anderson*
*Pierce Atwood LLP*
*Portsmouth, NH*
*Attorney for Nicholas Mercier*

## MEMORANDUM OPINION

### I.   INTRODUCTION

      The Court has before it the Motion of Nicholas Mercier to Intervene (Doc. No. 101) pursuant to 11 U.S.C. § 1109(b) and Bankruptcy Rule 2018(a), as well his Motion to Alter or Amend pursuant to Bankruptcy Rule 9023.  Mercier seeks status as a party in interest in order to assert the Motion to Alter or Amend.  If permitted to intervene, Mercier asks the Court to alter its June 21, 2013 order declining to retroactively lift the automatic stay.  The effect of such retroactive relief would be to validate a memorandum of foreclosure sale that Mercier entered into, post-petition, to purchase estate property from the Debtor's mortgagee.  The Court shall deny the Motion to Intervene because it is untimely.  Mercier declined to intervene until after the Court had rendered its decision on the stay relief motion, despite having notice of the bankruptcy

case since its inception and his active participation in the evidentiary hearing that preceded the Court's June 21, 2013 order.

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. BACKGROUND

The following facts are undisputed and largely culled from the evidentiary record established in connection with the Court's dismissal of this bankruptcy case.[1] Mercier attempted to purchase a parcel of the Debtor's real property at a foreclosure sale conducted by TD Bank, the Debtor's mortgagee. The Debtor filed the bankruptcy petition that initiated this chapter 11 proceeding in the midst of that foreclosure auction. Despite knowledge of the bankruptcy petition, TD Bank continued to proceed with the foreclosure auction; Mercier was the high bidder and signed a memorandum of foreclosure sale with TD Bank to purchase the property.

Immediately after the filing of the petition, TD Bank moved to dismiss the Debtor's bankruptcy case as a bad faith filing and also sought retroactive relief from the automatic stay of section 362(a) in an attempt to validate its foreclosure sale memorandum with Mercier.[2] The sale memorandum explicitly required TD Bank's prompt action to seek relief from the automatic stay. In re PM Cross, LLC, 494 B.R. 607, 613-14 (Bankr. D.N.H. 2013). The Court held an evidentiary hearing over the course of several days to determine whether cause existed to dismiss the case and retroactively lift the stay. Mercier participated as a witness during the evidentiary hearing. On June 21, 2013, the Court entered an order dismissing the chapter 11 case pursuant to

---

[1] These facts are discussed in depth in the Court's opinion, In re PM Cross, LLC, 494 B.R. 607 (Bankr. D.N.H. 2013).
[2] The existence of the automatic stay rendered the foreclosure sale memorandum void. Id. at 621.

2

section 1112(b) and declining to grant retroactive relief from the automatic stay (Doc. No. 93). Central to the Court's decision was the Debtor's bad faith conduct relating to the foreclosure sale. The Court found that the Debtor had a preferred party, Louis Pichette, bidding at the foreclosure auction. When the bidding price went over what Pichette was willing to pay, the Debtor filed its bankruptcy petition to prevent someone else—Mercier—from acquiring the property. In re PM Cross, at 620. This conduct, among other actions of the Debtor, contributed to the circumstances that merited dismissal of this case.

On July 5, 2013, Mercier filed the Motion to Intervene and the Motion to Alter or Amend. The Debtor filed a written objection only to the Motion to Alter or Amend (Doc. No. 105). The Court held a hearing on both motions, reserving a decision on Mercier's Motion to Intervene, while allowing him to argue the Motion to Alter or Amend.

Mercier argues that he should be allowed to intervene as a party in interest. He asserts that he has a sufficient economic interest in the chapter 11 proceeding and that any delay in his request to intervene should be forgiven, in light of the inequitable conduct of the Debtor and TD Bank. The Debtor argues that after the dismissal of the case, the Bank and the Debtor began negotiating to sell the property to Pichette, rather than the Bank appealing the Court's decision not to lift the stay or conducting another foreclosure sale.[3] This is inequitable, Mercier claims, because it was exactly what the Debtor wanted to achieve by filing the bankruptcy case. Mercier argues that the Court should not permit the Debtor to profit from his bad faith filing and at the same time should shield Mercier from harm caused by the automatic stay. Mercier believes he should not be harmed because of his attempt to purchase the property in good faith;

---

[3] No evidence concerning these post-dismissal facts is in the record, and the Court accepts Mercier's assertions about these events only for the sake of argument here.

he was only an unwitting victim of the Bank's stay violation.  See PM Cross, at 622.  The equities, as Mercier sees them, excuse his tardiness in seeking to intervene in the case.  At the conclusion of the hearing, the Court took Mercier's motions under advisement.

**III.    ANALYSIS**

The Bankruptcy Code affords parties a broad ability to appear and be heard in chapter 11 cases.  11 U.S.C. § 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."[4]  Bankruptcy Rule 2018(a) deals with "permissive intervention" and implements section 1109(b).  In re La Sierra Fin. Servs., Inc., 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002).  The rule provides that "[i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter."  Bankruptcy Rule 2018(a).  Under these provisions, the conception of party in interest is expansive and "designed to give the Court great latitude to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case."  In re P.S.N.H., 88 B.R. 546, 551 (Bankr. D.N.H. 1988) (citing In re Johns-Manville Corp., 36 B.R. 743, 754 (Bankr. S.D.N.Y. 1984)).  A potential intervener must have "a sufficient stake in the outcome of the proceeding so as to require representation.  Id. (citing In re Amatex Corp.,755 F.2d 1034, 1042 (3d Cir. 1985)).

Under Rule 2018(a), a party must establish cause to intervene.  In considering whether cause exists, courts look at whether the party is adequately represented and whether intervention would result in undue delay or prejudice to the original parties.  In re P.S.N.H., 88 B.R. at 551.

---

[4] Section 1109(b) does not define interested party, but rather provides a list of non-limiting, illustrative examples.  In re La Sierra Fin. Servs., Inc., 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002).

4

The right to intervene, while broad, is thus by no means unfettered.  Courts have noted that "overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby thwarting the goal of a speedy and efficient reorganization." In re Ionosphere Clubs, 101 B.R. 844, 850 (Bankr. S.D.N.Y. 1989); see In re Barrick Grp., Inc., 98 B.R. 133, 134 (Bankr. D. Conn. 1989).  Because the Court finds the Motion to intervene to be untimely, it need not address whether Mercier has a sufficient interest in the case to be considered a party in interest.

There is no specific time limitation on permissive intervention in Rule 2018.  Cf. Rule 7024 (applying Federal Rule of Civil Procedure 24 to adversary proceedings).[5]  However, the concept of avoiding "undue delay" in permitting intervention by a party necessarily implicates a requirement that any request to intervene be timely.  See P.S.N.H., 88 B.R. at 551.  Given the similarities between the issues in deciding whether to permit intervention in bankruptcy cases under Rule 2018 and in civil actions under Federal Rule of Civil Procedure 24, the Court finds helpful cases discussing intervention under Rule 24.

In R & G Mortgage Corp. v. Federal Home Loan Mortgage Corp., 584 F.3d 1 (1st Cir. 2009), the First Circuit upheld a district court's determination that a post-judgment motion to

---

[5] The full text of Rule 24(b) is as follows:
(b) Permissive Intervention.
    (1) In General. On timely motion, the court may permit anyone to intervene who:
        (A) is given a conditional right to intervene by a federal statute; or
        (B) has a claim or defense that shares with the main action a common question of law or fact.
    (2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
        (A) a statute or executive order administered by the officer or agency; or
        (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.
    (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

intervene under Rule 24 was untimely.[6]  That case involved a contractual dispute between a mortgage lender and two mortgage servicers.  The mortgage lender decided to cancel its contract with one servicer and offer the contract to a second.  The servicer whose contract was cancelled sued the mortgage lender for breach of contract and obtained a temporary restraining order.  The newly chosen servicer was promptly put on notice of both the lawsuit and the TRO.  After the suit had been pending for two and a half months, the mortgage lender and the cancelled servicer negotiated a settlement agreement.  A week after the district court approved the settlement agreement, and two and a half months after it had received notice of the lawsuit and TRO, the new servicer moved to intervene and challenge the settlement.  Id. at 6-7.  The First Circuit held that this motion was untimely.  The court noted that in evaluating such a request, "the status of the litigation at the time of the request for intervention is 'highly relevant'" and that "[a]s a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." Id. at 7.  With respect to a general rule on timeliness the court stated:

> In conducting a timeliness inquiry, there are no ironclad rules about just how celeritously, in terms of days or months, a person must move to protect himself after he has acquired the requisite quantum of knowledge. The passage of time is measured in relative, not absolute, terms. Thus, what may constitute reasonably prompt action in one situation may be unreasonably dilatory in another.

Id.

In the present case, Mercier's request to intervene is untimely.  He knew of the Debtor's threat of filing a bankruptcy case prior to the foreclosure.  He knew of the commencement of the bankruptcy case within minutes of its inception, as the filing was revealed at the foreclosure

---

[6] In R & G Mortgage, the court's analysis on timeliness focused on Fed. R. Civ. P. 24(a), which deals with intervention as of right.  The court noted that "the timeliness requirement is often applied less strictly with respect to intervention as of right." Id. at 8.  Here, the Court addresses permissive intervention, where timeliness is vetted more aggressively.  Thus, the points the court in R & G Mortgage made apply with even greater force in a case of permissive intervention and, accordingly, to Mercier's Motion to Intervene.

auction in which he was participating. The case was pending for two months before being dismissed. TD Bank filed the motion for relief from stay and motion to dismiss two days after the case itself was filed. Mercier was an active participant in the case: He participated in the evidentiary hearing as a witness; indeed, the Court referred to his testimony throughout its memorandum opinion regarding dismissal and denial of retroactive stay relief. See, e.g., In re PM Cross, 494 B.R. at 620. It is clear that Mercier was on notice that his rights could be affected by the bankruptcy from the outset.

     Mercier believed his rights were adequately protected by TD Bank during the pendency of the case. He asserts that it only became clear to him that his and TD Bank's interests were not completely in line when TD Bank failed to appeal the Court's decision with regard to retroactive stay relief and began to negotiate with the Debtor to sell the property to a third party. Assuming for the sake of argument that Mercier's rights are no longer adequately protected, it should have been clear to him that TD Bank would not be obligated to initiate foreclosure proceedings anew if the Court did not grant retroactive relief. Additionally, there was no reason for Mercier to think that TD Bank would necessarily appeal an adverse determination with respect to retroactive stay relief. Mercier has not argued that any such agreement existed between him and the Bank. The only evidence of an agreement in the record is contained in the memorandum of sale, in which the Bank agreed to seek relief from the automatic stay.

     Mercier also argues that because he did not have counsel in the bankruptcy case, he did not understand the complex legal issues involved and that this ignorance contributed to his delay. The Court notes that Mercier elected not to engage (or fully engage) counsel only after the course of events turned against him. Mercier has argued that events moved too quickly for him to have counsel representing him during the dismissal hearings. The Court does not credit this

7

argument.  The bankruptcy case had been pending for two months before it was dismissed.  Mercier acknowledged that he engaged counsel to assist him in preparing for the foreclosure auction.  What he has not argued is that he tried and failed to obtain counsel during the bankruptcy case.  The totality of these circumstances indicate to the Court that Mercier did not seek to intervene earlier because he believed there was no need to do so, choosing to rely on the Bank's separate counsel—compensated by the Bank, of course—to assert the positions that Mercier would otherwise have asserted on his own behalf.  This is not sufficient reason for the Court to grant his belated Motion to Intervene.

Mercier cites Puerto Rico Telephone Co. v. Sistema de Retiro de Los Empleados Del Gobierno Y La Judicatura, 637 F.3d 10 (1st Cir. 2011), for the proposition that the First Circuit Court of Appeals readily permits motions to intervene post-judgment.  In Puerto Rico Telephone, the court reversed the district court's decision denying a post-judgment motion to intervene.  Id. at 12.  The district court had denied the motion to intervene without a hearing and without explaining its reasoning.  The Court of Appeals was unable to discern why the motion had been denied as the underlying litigation was "in its infancy."  Id. at 16.  Additionally, the party seeking intervention had sued the defendant in a separate action on similar claims and was seeking to intervene to consolidate the cases.  The Court of Appeals felt that no party was prejudiced in denial of the motion to intervene except the putative intervener, as the defendant would have to participate in the separate lawsuit in any event.  The court remanded the case to the district court to consider whether the motion to intervene should be granted.

Puerto Rico Telephone is readily distinguishable from the circumstances here.  First, in relative terms, this bankruptcy case was not "in its infancy."  It was pending for two months, and from the beginning it was subject to expedited dismissal proceedings.  Accordingly, prompt

8

dismissal of the case was a possibility almost immediately. Second, there is no discernible judicial efficiency in allowing Mercier to intervene; to the contrary, in the procedural posture of this case, it would run afoul of a clear policy interest expressed in the Bankruptcy Code.

TD Bank moved to dismiss this case under section 1112(b). Section 1112(b)(3) provides that "the court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph." During the dismissal proceedings, the Court adhered to this statutorily imposed deadline and obtained a brief extension only with the assent of TD Bank. To permit Mercier to intervene at this late date—after the Court has made its decision—would cut against the intent of section 1112(b), which requires prompt judicial determination of dismissal proceedings. Although Mercier is not requesting to intervene and challenge the dismissal of the case, his request to intervene would create uncertainty as to whether the automatic stay existed at the inception of the case. In terms of the practical realities, any uncertainty involving the existence of the automatic stay will prevent the parties from disposing of the Debtor's real property, which is the same effect protracted dismissal proceedings would have had on the parties.

Finally, the equities of the case do not support allowing Mercier to intervene at this stage. Mercier argues that it would be inequitable to prevent him from intervening. Specifically, he argues that the Debtor should not be allowed to profit from its bad faith filing. Mercier believes the Debtor is profiting from the bad faith filing insofar as the Debtor was able to prevent TD Bank from selling the property to Mercier at the foreclosure auction. Mercier wants to intervene

and challenge the Court's determination that the foreclosure sale was void. He argues that to prevent him from intervening would be to allow the Debtor to succeed in its bad faith purpose.

The Court is unwilling to allow Mercier to intervene based on the equities of the case for two reasons. The Court previously determined that it would not retroactively lift the automatic stay to the filing of the petition and validate the foreclosure sale. In re PM Cross, 494 B.R. at 621. The Court reasoned that granting retroactive relief "would encourage other creditors to proceed as TD Bank did: continuing [to proceed] with a foreclosure sale, despite knowledge of a bankruptcy filing, and hoping that the bankruptcy court would grant retroactive relief." Id. The Court found this incentive "less than compelling." Id. The Court still believes that reasoning is less than compelling and is unwilling to provide an incentive for creditors to violate the automatic stay in future cases. The Court does not make this decision solely on a prospective basis; it would also be inequitable to allow Mercier to benefit from the stay violation. Mercier participated in the signing of a memorandum of sale, despite knowing that the Debtor had filed a bankruptcy petition. Accordingly, he does not have the clean hands required for the Court to grant him equitable relief.

## IV.    CONCLUSION

The Court shall deny the Motion to Intervene because it has been untimely asserted. The Court shall not take up the Motion to Alter or Amend because the decision with regard to intervention deprives Mercier of the standing necessary to assert a motion under Bankruptcy Rule 9023. This opinion constitutes the Court's findings of fact and conclusions of law in accord with Bankruptcy Rule 7052. The Court shall issue a separate order consistent with its conclusions in this opinion.

ENTERED at Manchester, New Hampshire.

Date:   November 15, 2013              /s/ Bruce A. Harwood
                                       Bruce A. Harwood
                                       Chief Bankruptcy Judge